**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2183-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

COREY J. OTTE,

    Defendant-Appellant.

_____

Submitted November 12, 2025 – Decided January 9, 2026

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 23-06-0780.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Lucas B. Slevin, Assistant Deputy Public Defender, of counsel and on the briefs).

Wayne Mello, Acting Hudson County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief; Josemiguel Rodriguez, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals his guilty plea conviction for assaulting a law enforcement officer. He challenges the trial court's ruling that he was procedurally barred from the Pretrial Intervention (PTI) program because he applied after entering a guilty plea that did not contemplate PTI. Defendant also argues that the State's decision not to allow PTI was a patent and gross abuse of discretion. After considering the record in light of the governing legal principles, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. On April 10, 2023, two uniformed patrol officers saw defendant using a vape on the platform of the 34th Street Light Rail station in Bayonne. The officers instructed defendant to stop, and he initially complied. The officers then walked up and down the platform and saw defendant using the vape again. They told him to leave the station. He complied after some discussion with the officers.

The officers continued their patrol and walked toward the 45th Street station. While en route, they saw defendant walking on the train tracks. They asked him to stop, but he ignored them and continued walking. A physical

A-2183-23

altercation ensued when the officers attempted to arrest defendant. The altercation resulted in injuries to the officers. At his plea colloquy, defendant admitted that he attempted to cause bodily injury to one of the officers.

In June 2023, defendant was charged by indictment with two counts of third-degree aggravated assault on a law enforcement officer (N.J.S.A 2C:12-1(b)(5)(a)) (Counts one and two) and one count of third-degree resisting arrest (N.J.S.A 2C:29-2(a)(3)(b)) (Count three). In an accompanying complaint, defendant was charged with the disorderly persons offenses of obstruction of law enforcement function (N.J.S.A. 2C:29-1(a)), and criminal trespass (N.J.S.A. 2C:18-3(b)).

On August 28, defendant pled guilty pursuant to a negotiated plea agreement to a reduced charge of fourth-degree assault on a law enforcement officer (N.J.S.A. 2C:12-1(b)(5)(a)) (amended Count one). As part of the plea agreement, the State dismissed the remaining charges against defendant (Counts two and three and the disorderly persons offenses) as well as a separate charge stemming from an unrelated incident. The State also agreed to "seek non-custodial probation with mental health treatment" and consented to defendant's release from pretrial detention while he awaited sentencing. The plea agreement made no mention of PTI.

A-2183-23

At the conclusion of the plea hearing, defense counsel requested, and the trial court granted, an out-of-time order allowing defendant to apply to PTI. The State took no position on the record as to the request.

On September 6, defendant applied to PTI, and on October 20, the vicinage's criminal division manager (CDM) issued a report not recommending defendant to PTI. In support of the decision, the CDM cited defendant's outstanding bench warrant in New York, as well as his six arrests and two pending cases in Hudson and Passaic Counties. The report concluded that these cases were "most assaultive in nature, indicative of a continuing pattern of antisocial behavior." The report also discussed defendant's history of mental health struggles, abuse and neglect by his parents, substance abuse, and housing instability.

On October 25, the State adopted the CDM's recommendation and rejected defendant's application to PTI. The State provided both procedural and substantive grounds for its rejection. Procedurally, the State noted that "PTI was not negotiated at the time of the plea," that the State "did not contemplate [PTI] before, during, or after the entry of the plea," and that " an out of time application to PTI after the entry of a guilty plea undermines the negotiation of the plea and does not indicate a meeting of the minds." Substantively, the State

A-2183-23

also based its rejection on three of the statutory factors guiding PTI consideration: (1) "[t]he nature of the offense;" (2) "[t]he facts of the case;" and (10) "[w]hether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior." N.J.S.A. 2C:43-12(e) (1), (2), (10).

On October 27, defendant appeared for sentencing. Pursuant to the plea agreement, the court dismissed defendant's remaining and additional charges. At the conclusion of the hearing, defense counsel informed the court that defendant's outstanding New York bench warrant had been resolved. Because that warrant was part of the basis for the CDM's decision not to recommend defendant to PTI, defendant moved to be reconsidered for PTI. The State continued to oppose defendant's entry into PTI. The court granted defendant's reconsideration motion as well as a second out-of-time order allowing defendant to reapply to PTI. As a result of these orders, the court did not sentence defendant at the October 27 hearing.

On November 17, the CDM issued a new report, this time recommending defendant for enrollment into PTI. The new report noted defendant's "willingness to comply with the terms and conditions of the program" and contained an additional paragraph not present in the first report:

[Defendant] has demonstrated he is motivated to be a productive member of society as he has taken positive steps to improve his life by working on his self-care, evidenced by progress with respect to his mental health/compliance with treatment/medication. [Defendant] is further receiving public assistance to assist with his financial challenges and homelessness, until [he] finds employment/housing.

On December 8, the State noted on the record that it continued to oppose defendant's admission to PTI—notwithstanding the CDM's updated recommendation—for the reasons stated in its October 25 filing. On December 28, defendant filed a motion and supporting brief appealing the State's PTI rejection to the trial court, requesting that the court enroll him into PTI over the State's objection, or in the alternative, order the State to reconsider his application. On January 9, 2024, the State filed an opposition brief arguing that defendant's admission to PTI was procedurally barred by his guilty plea. On January 26, the Court heard oral argument.

On January 29, the court denied defendant's motion, issuing a nine-page written opinion. The court held that defendant was barred from PTI because his application was made after the entry of a guilty plea that did not contemplate PTI. Because the court denied the motion based on a procedural bar, it did not address whether the prosecutor committed a patent and gross abuse of discretion.

6

On February 1, defendant was sentenced to a one-year term of probation with applicable fines and fees.

This appeal followed. Defendant raises the following contentions for our consideration in his initial brief:

> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO BE ENROLLED INTO THE PRE-TRIAL INTERVENTION PROGRAM OVER THE PROSECUTOR'S OBJECTION.
>
> > A. The trial court incorrectly found that defendant was procedurally barred from applying to the Pre-Trial Intervention Program.
> >
> > B. The prosecutor's rejection of defendant's admission into the Pre-Trial Intervention Program was a patent and gross abuse of discretion.

Defendant raises the following contention in his reply brief:

> THE TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION TO COMPEL ENTRY INTO THE PRE-TRIAL INTERVENTION PROGRAM WAS ERRONEOUS ON BOTH PROCEDURAL AND SUBSTANTIVE GROUNDS.

II.

As a general matter, a trial court reviews a prosecutor's PTI decision with a high degree of deference, applying the "patent and gross abuse of discretion" standard. State v. Watkins, 193 N.J. 507, 520 (2008). In this case, however, the

trial court did not review the prosecutor's exercise of discretion in weighing the relevant PTI factors; rather, the court focused on the procedural question of whether defendant was barred from PTI by virtue of his negotiated guilty plea. Accordingly, we review the trial court's decision de novo, giving no special deference to either the court or the prosecutor.

In State v. Bell, the defendant applied to PTI after his conviction by jury trial. 217 N.J. 336, 338 (2014). Our Supreme Court held that PTI "is a pretrial diversionary program that is not available to a defendant once the charges have been tried before a judge or a jury and a guilty verdict has been returned." Ibid. The Court reasoned that allowing a defendant into PTI in those circumstances would "nullif[y] a valid verdict of guilt" and "thwart[] the purpose" of the PTI program, which contemplates pretrial diversion that is "an alternative to the full criminal justice mechanism of a trial." Id. at 348.

In State v. Waters, we extended Bell's holding to cases in which a trial court grants PTI after the entry of a valid guilty plea. 439 N.J. Super. 215 (App. Div. 2015). We noted,

> Although such concerns are most serious when a trial court grants a PTI appeal after trial as in Bell, such concerns are also raised when a trial court grants a PTI appeal after a valid guilty plea. . . . Therefore, the granting of the PTI appeal . . . after a valid guilty plea was inappropriate.

8

[439 N.J. Super. at 224-25.]

Defendant argues the rule in Waters, which was announced on January 30, 2015, was abrogated by amendments to the PTI statute that were enacted in August 2015. Those amendments, codified in N.J.S.A. 2C:43-12(g)(3), created a new category of defendants who are required to first plead guilty to qualify for PTI. Specifically, the statute now provides, in pertinent part:

> (3) Admission into supervisory treatment shall be available to the following defendants only upon entering a plea of guilty: (a) a defendant charged with a first or second degree crime; (b) a defendant charged with any crime if the defendant had previously been convicted of a first or second degree crime; (c) a defendant charged with a third or fourth degree crime involving domestic violence, as defined in [N.J.S.A. 2C:25-19]; or (d) a defendant charged with any disorderly persons or petty disorderly persons offense involving domestic violence, as defined in [N.J.S.A. 2C:25-19] if the defendant committed the offense while subject to a temporary or permanent restraining order . . . . For any such defendant, following the plea of guilty the plea shall be held in an inactive status pending termination of supervisory treatment pursuant to subsection d. or e. of N.J.S.[A.] 2C:43-13. Upon successful completion of the program of supervisory treatment the charges shall be dismissed.
>
> [N.J.S.A. 2C:43-12(g)(3).]

Defendant does not dispute that he does not fall into one of the enumerated categories for which a guilty plea is permitted, indeed required, before entry into

9

PTI. He nonetheless argues that the 2015 amendments worked a broader change to the PTI program that effectively supplants the rationale and holding in Waters. We disagree.

It is well-settled that "[t]he overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). As a result, "[t]o determine the Legislature's intent, we look to the statute's language and give those terms their plain and ordinary meaning because 'the best indicator of that intent is the plain language chosen by the Legislature.'" State v. J.V., 242 N.J. 432, 442-43 (2020) (first citing DiProspero v. Penn, 183 N.J. 477, 492 (2005); and then quoting Johnson v. Roselle EZ Quick, LLC, 226 N.J. 370, 386 (2016)). Accordingly, "[i]f, based on a plain and ordinary reading of the statute, the statutory terms are clear and unambiguous, then the interpretative process ends, and we 'apply the law as written.'" Id. at 443 (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)). It is inappropriate for "[a] court . . . [to] rewrite a plainly[ ]written enactment of the Legislature [or to] presume that the Legislature intended something other than that expressed by way of the plain language." Ibid. (quoting O'Connell v. State, 171 N.J. 484, 795 (2002)) (third alteration in

10

original).  Furthermore, in <u>DiProspero</u>, our Supreme Court emphasized that "the Legislature is presumed to be aware of judicial construction of its enactments." 183 N.J. at 494 (quoting <u>N.J. Democratic Party, Inc. v. Samson</u>, 175 N.J. 178, 195 n.6 (2002)).

Here, the plain text of the 2015 amendments—enumerating four categories of cases in which a guilty plea is required before entry into PTI— shows conclusively that the Legislature knew how to abrogate the general rule set forth in <u>Waters</u> but did so only with respect to a limited, specified class of cases.  <u>Cf.</u> <u>DiProspero</u>, 183 N.J. at 495 ("The canon of statutory construction, expressio unius est exclusio alterius—expression of one thing suggests the exclusion of another left unmentioned—sheds some light on the interpretative analysis." (quoting <u>Brodsky v. Grinnell Haulers, Inc.</u>, 181 N.J. 102, 112 (2004))).

We are satisfied that nothing in the amended PTI statute or legislative history indicates any legislative intent to authorize post-plea PTI beyond the four enumerated circumstances.  <u>See</u> <u>S. Judiciary Comm. Statement to S. 559</u> (June 11, 2015).  We thus conclude that the 2015 amendments do not authorize post-plea PTI entry in this case, and that the trial court correctly found that

defendant is barred from PTI.[1]  Accordingly, we need not address defendant's contention that the State grossly and patently abused its discretion in applying the PTI factors.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[1]  We emphasize, moreover, that defendant's negotiated guilty plea did not contemplate entry into the program.  Stated another way, defendant did nothing to put the State on notice that he would be applying to PTI after pleading guilty.

A-2183-23